66 F.3d 345
 38 U.S.P.Q.2d 1220
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The READ CORPORATION and F.T. Read & Sons, Inc., Plaintiffs-Appellants,
v.
Robert FREIDAY, David Lowrie and Shaker Buddy, Inc.,
Defendants-Appellees.
 No. 94-1504.
 United States Court of Appeals, Federal Circuit.
 Aug. 30, 1995.
 
 Before RICH, CLEVENGER, and RADER, Circuit Judges.
 DECISION
 RICH, Circuit Judges.
 
 
 1
 The Read Corporation (Read) appeals the amount of damages awarded by the August 3, 1994, judgment of the United States District Court for the District of Massachusetts, for infringement of U.S. Patent Nos. 4,197,194 ('194 patent), 4,256,572 ('572 patent), and Design Patent No. 263,836 ('836 patent) by Robert Freiday, David Lowrie, and Shaker Buddy, Inc. (collectively, Shaker Buddy). We vacate and remand.
 
 DISCUSSION
 
 2
 The '194, '572, and '836 patents are directed to a portable loam screening apparatus, known in the construction industry as top loading shakers. This appeal is limited to the amount of the damage award as patent validity and infringement were established in a consent judgment entered December 7, 1993. Accordingly, a discussion of the patents is unwarranted.
 
 
 3
 The consent judgment enjoined Shaker Buddy from manufacturing, using, selling, or offering for sale, infringing products in the future. Prior to this suit, Shaker Buddy manufactured or sold fifty-two infringing units that were the subject of a license agreement which was incorporated into the consent judgment. Under the license, Shaker Buddy was required to pay Read $44,750 by a date certain, and if delinquent, the license would be "null and void and of no legal effect." The payment was not made in a timely manner and Read sought to recover the infringement damages by filing a contempt proceeding in the district court.
 
 
 4
 The district court held that the license was void and that Shaker Buddy had violated the consent judgment. Regarding damages, the district court applied the Panduit test to determine lost profits. Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156, 197 USPQ 726, 730 (6th Cir.), cert. denied, 439 U.S. 856 (1978). The Panduit factors included the following: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit that would have been made. The district court found that Read had met its burden of establishing that it had the manufacturing and marketing capability to exploit the demand, and that the profit margin on each infringing unit was $6,110. The district court, however, found that Read had not met its burden regarding acceptable noninfringing substitutes or demand for the patented product. In reaching its conclusion on these two factors, the district court imposed a "price sensitivity" component based on general economic conditions. The district court found that "in the recessionary era that we are talking about, where building was down, developments were off, there was a large, at least in this area, collapse in the real estate market, that what a buyer would find acceptable would be very price sensitive. And this of course, elides over into the demand for the patented product." Assuming these conclusions and that Shaker Buddy's machines were cheaper than plaintiff's as fact, the district court stated that it could not find that there was even a reasonable probability that Read would have sold fifty-two units. Rather, the district court found that sale of ten units by Read was more likely, roughly 20% of the number of infringing units sold, the court said. Accordingly, lost profits were awarded on only ten units for a total of $61,100.
 
 
 5
 Regarding reasonable royalty, the district court found that a reasonable rate would be higher than $44,750, the negotiated license price, but would not exceed $61,100, the amount of the lost profits awarded. In following the statute, which establishes that a damage award is to be no less than a reasonable royalty, the district court awarded the $61,110. 35 U.S.C. Sec. 284 (1988). Read was not awarded lost profits or a reasonable royalty on the forty-two remaining infringing units. It is from this award that Read appeals.
 
 
 6
 We review the district court's award of damages to determine if it is based on clearly erroneous factual findings, legal error, or a manifest error of judgment. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1543, 35 USPQ2d 1065, 1067 (Fed.Cir.1995) (in banc).
 
 
 7
 To recover lost profits, this court just recently held in Rite-Hite:
 
 
 8
 The patentee need only show that there was a reasonable probability that the sales would have been made "but for" the infringement. When the patentee establishes the reasonableness of this inference, e.g., by satisfying the Panduit test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales. The burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales.
 
 
 9
 Id. at 1545, 35 USPQ2d at 1069 (citations omitted).
 
 
 10
 In determining whether there was a reasonable probability that Read, rather than Shaker Buddy, would have made the fifty-two sales, the district court erred, first, by adding a price sensitivity component to the Panduit test where a two-supplier market existed. "Where ... the patent owner and the infringer were the only suppliers of the product, causation may be inferred." Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065, 219 USPQ 670, 675 (Fed.Cir.1983); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1578, 12 USPQ2d 1026, 1029 (Fed.Cir.1989) ("In the two-supplier market, it is reasonable to assume, provided the patent owner has the manufacturing and marketing capabilities, that it would have made the infringer's sales."), cert. denied, 493 U.S. 1022 (1990); Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 672, 7 USPQ2d 1097, 1106 (Fed.Cir.) ("The Panduit test in part (2) embodies the idea stated in other precedent that lost profits for all sales made by an infringer are easier to obtain where there are only two suppliers in the market, the infringer and the patent owner."), cert. denied, 488 U.S. 968 (1988).
 
 
 11
 During oral argument, Shaker Buddy conceded that the evidence supported a finding that this was indeed a two-supplier market and that there was no contrary evidence. When, as here, a two-supplier market exists, it is reasonable to assume that the patentee would have made the infringer's sales. This conclusion comports with the rationale that in a two-supplier market, one being the patentee and the other the infringer, there is necessarily an absence of acceptable noninfringing substitutes. Accordingly, Read met its burden of establishing a prima facie showing that, but for Shaker Buddy's infringing sales, it would have made all fifty-two sales.
 
 
 12
 Once Read shows entitlement, the burden shifts to Shaker Buddy to show that this conclusion is unreasonable. At this point, it is proper to consider whatever evidence may have been presented to exclude some or all of the infringing sales in calculating lost profits. Herein lies the second error by the district court. As discussed above, the district court imported a price sensitivity component, which was in turn used to discount the number of infringing units contributing to lost profits. The economic conditions were common to both suppliers and there is no evidence to support disparate treatment of the only two suppliers in this market. Furthermore, there is no evidence to support the district court's decision to limit the lost profits to ten of the fifty-two infringing units. At oral argument, Shaker Buddy could not account for the district court's conclusion. Based on the record, neither can this court. The "roughly 20 percent" district court's guess was purely arbitrary. Accordingly, this finding is not supported by substantial evidence and is, therefore, clearly erroneous. We vacate the judgment and remand to the district court with instructions to enter judgment awarding lost profits on the basis that Read would have sold fifty-two units had it not been for the infringement by Shaker Buddy.
 
 
 13
 NO COSTS.