ON–LINE TECHNOLOGIES, INC. Plaintiff,

v.

PERKIN–ELMER CORP., et al., Defendants.

No. CIV. 3:99CV2146 (JBA).

United States District Court, D. Connecticut.

March 23, 2006.

Alan Rosenthal, Rosenthal & Osha, David H. Berg, Joel Androphy, Wade Howard, Berg & Androphy, David Cabello, Wong, Cabello, Lutsch, Rutherford & Brucculeri, Houston, TX, Edward R. Scofield, Jacob D. Zeldes, Zeldes, Needle & Cooper, Bridgeport, CT, Gabriel A. Berg, Berg & Androphy, New York, NY, Martin A. Gould, Gould, Killian & Wynne, Hartford, CT, Matthew Scott Hirsch, Law Offices of Matthew S. Hirsch LLC, Trumbull, CT, for Plaintiff.

Brian D. Porch, Jr., Hahn & Hessen, New York, NY, C. Kyle Musgrove, Edward T. Colbert, Kenyon & Kenyon, Mark M. Supko, Crowell & Moring, Washington, DC, Catherine Dugan O'Connor, Jonathan B. Tropp, Lorey Rives Leddy, Natasha Marie Lipcan, Day, Berry & Howard, Stamford, CT, Francis H. Morrison, III, Matthew J. Becker, Robert A. Brooks, Day, Berry & Howard, Hartford, CT, Karen A. Moreno, Messner & Reeves, Denver, CO, for Defendants.

*Ruling on Defendants' Motion to Preclude Plaintiff's Assertion of New Theory of Patent Damages [Doc. # 238] and Plaintiff's Objections to Magistrate Judge's Discovery Ruling [Doc. # 250]*

ARTERTON, District Judge.

After the Federal Circuit's remand of this patent case, *see On–Line Techs., Inc. v. Perkin–Elmer Corp.,* 386 F.3d 1133, 1140 (Fed.Cir.2004), defendants Perkin–Elmer Corp. and associated entities (collectively "PE") filed a Motion to Preclude Plaintiff's Assertion of New Theory of Patent Damages [Doc. # 238], and plaintiff On–Line Technologies, Inc. ("OLT"), filed objections to Magistrate Judge Margolis' Ruling [Doc. # 249] quashing certain subpoenas seeking discovery related to damages and the validity of U.S. Patent No. 5, 440, 143 (" '143 patent") at issue in this case [Doc. # 250]. For the following reasons defendants' motion is granted in part and denied and plaintiffs' objections are overruled.

## I. Motion to Preclude New Theory of Patent Damages

Defendants seek to preclude plaintiff from asserting at trial damages for lost profits due to defendants' conceded infringement of the '143 patent. *See* Mot. to Preclude; Stipulation [Doc. # 229]. They argue that such profits are not recoverable for patent infringement as a matter of law, that the facts of this case cannot support an award of lost profits, and that plaintiff's assertion of such a theory is untimely and prejudicial.

### A. Standard

The applicable patent statute provides: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable

royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Congress' purpose in enacting § 284 was to "ensure that the patent owner would in fact receive full compensation for *any damages* [it] suffered as a result of the infringement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983) (emphasis supplied, internal citation and quotation marks omitted). Thus Federal Circuit caselaw permits recovery of lost profits in certain circumstances:

> To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits. The patent owner must show that "but for" the infringement, it would have made the infringer's sales. An award of lost profits may not be speculative. Rather the patent owner must show a reasonable probability that, absent the infringement, it would have made the infringer's sales.

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed.Cir. 1993) (citation omitted).

■ "The measurement of actual damages for patent infringement is a question of fact.... The patent owner bears the burden of proving this amount." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed.Cir. 1996) (citations omitted). The claimant's burden is to "demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales." *Id.* In other words, "[t]he question to be asked in determining [lost profits] damages is ... had the Infringer not infringed, what would Patent Holder have made?" *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1064 (Fed.Cir. 1983) (internal alterations, citations and quotation marks omitted).

■ The following test, derived from *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir.1978)

has "been accepted as a useful, but non-exclusive, way for a patentee to prove entitlement to lost profits damages: [the] patentee [must] establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made." *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed.Cir.1995) (en banc).

### B. Analysis

OLT's accounting expert, David E. Yurkerwich, prepared a report in March 2002 (updated several times in Fall 2002) estimating OLT's lost profits damages under plaintiff's now-dismissed fraud claim. *See* Yurkerwich Report, Mem. in Support of Def. Mot. to Preclude, Ex. A, at 24, 27. His calculations were based on two theories of lost sales: first, "Perkin–Elmer's alleged fraudulent behavior delayed On–Line's business strategy" by two years, between 1996 (the date OLT projected its patented gas analyzers would be available for sale under its business plan) and 1998 (the year OLT actually began selling its devices); second, because the manufacturing deal with PE fell through, "On–Line was forced to produce the product less efficiently [resulting in] a lower margin product with a higher sales price." *Id.* at 28. Yurkerwich also calculated the additional lost value due to PE's alleged fraud to include lost business growth opportunities due to the above two factors. Finally, Yurkerwich concluded that because OLT's sales and profits would have been higher, causing OLT's stock price to be higher, absent defendants' infringement OLT would have obtained a higher price when it was sold to MKS Instruments in May 2001.

Defendants argue that because plaintiff's claim for lost profits originally was

calculated in connection with OLT's fraud claim, plaintiff now should be precluded from seeking lost profits as a remedy for patent infringement. As the Court stated during the post-remand status conference on January 10, 2005, defendants' argument elevates form over substance. Yurkerwich's report disclosed a claim for lost profits, and therefore plaintiff is not asserting a "new" damages theory. As plaintiff stated during the status conference, Yurkerwich merely separated these theories of damages to avoid "double dipping." Defendants deposed Yurkerwich on three dates in 2002, giving them an opportunity to explore the basis of Yurkerwich's reasoning and calculations, *see* Def. Mem. in Support, Ex. D, E, F, and the parties were given the opportunity for further damages discovery post-remand, thus permitting plaintiff to update Yurkerwich's report if it so chooses. While defendants argue that the expert report was due and final in 2002, the Court after remand clearly permitted and encouraged updated expert reports and other discovery on damages prior to trial, which has not yet been scheduled. In sum, defendants lost on appeal and cannot now freeze the evidence in this case into its pre-appeal form.

Defendants argue that damages for lost profits and lost value are not available to plaintiff by law or on the facts of this case. Although plaintiff argues that this matter is inappropriate for resolution before trial, certain salient facts are undisputed. Yurkerwich's report calculated damages on the theory that absent the alleged fraud by defendants, OLT would have begun selling its patented devices in 1996, but did not actually begin "substantive production of FT–IR instruments" until 1998. Yurkerwich Rep. at 28. PE began selling its competing MCS 100 E gas analyzers, which are stipulated to infringe the '143 patent, in 1997. *Id.* at 7.

■ As plaintiff acknowledges, its burden of proving lost profits is to show "that 'but for' the infringement, the patent owner *would have made the sales that the infringer made,* charged higher prices, or incurred lower expenses." *Lam,* 718 F.2d at 1064 (emphasis added). In *Lam,* on which plaintiff heavily relies, both the patent owner and infringer made and sold lamps containing the patented technology during the period at issue. In this case, it is undisputed that neither party made or sold gas analyzers containing the invention in the '143 patent during 1996, and OLT was not yet in the market in 1997. Plaintiff has not cited, and the Court has not found, any case permitting recovery of lost profits for a period when the patent owner was not actually making, selling or licensing the patented technology. *See Poly– America, L.P. v. GSE Lining Tech., Inc.,* 383 F.3d 1303, 1311 (Fed.Cir.2004) ("[T]he patentee *needs to have been selling some item,* the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits.") (emphasis supplied). *Lam*'s holding permitting a patentee to recover projected future lost profits is not to the contrary, because there the patent holder based its lost profits projections on actual past sales data. 718 F.2d 1056. Likewise, Lam was permitted to recover lost profits on a theory that it was forced to reduce the price of its lamps to meet the prices set by the infringer, and this basis for recovery necessarily is premised on a market with two major suppliers actually selling their products at certain prices. *Id.* at 1067. Moreover, the *Panduit* test, although not the exclusive method for proving lost profits, requires plaintiff to show "manufacturing and marketing capability to exploit [a market] demand." *See Rite–Hite,* 56 F.3d at 1545; *Kearns v. Chrysler Corp.,* 32 F.3d 1541, 1551 (Fed.Cir.1994) (Where plaintiff's proof "demonstrate[d] plans for man-

ufacture that were tentative, speculative and contingent," plaintiff was not entitled to lost profits for infringement). Thus, plaintiff is not entitled to lost profits for the period 1996–1998 when it lacked manufacturing and marketing capacity and was not making or selling FT–IR gas analyzers; its remedy, if any, for infringement during this period would be a reasonable royalty.

Defendants also argue that plaintiff is not entitled to "lost value" infringement damages, *e.g.* loss in sales, stock price and growth rate, after 1998. They cite language in *Rite–Hite* stating:

> Notwithstanding the broad language of § 284, judicial relief cannot redress every conceivable harm that can be traced to an alleged wrongdoing. For example, remote consequences, such as a heart attack of the inventor or *loss in value of shares of common stock of a patentee corporation caused indirectly by infringement are not compensable.* Thus, along with establishing that a particular injury suffered by a patentee is a 'but for' consequence of infringement, there may also be a background question whether the asserted injury is of the type for which the patentee may be compensated.

*Rite–Hite,* 56 F.3d at 1546 (emphasis supplied, citation and footnote omitted). This case established a "reasonable, objective foreseeability" rule, and specifically held that a patentee can recover lost profits related to an invention which was not the subject of a patent but which competed with the infringing product, and thus sales of which reasonably could be anticipated to diminish due to infringement of the patent. The language in *Rite–Hite* concerning loss in value of stock price is *dicta,* as the facts in that case did not raise that issue. Moreover, defendants ignore the qualifier in the sentence: "loss in value of shares of common stock of a patentee corporation *caused indirectly by infringement* are not compensable...." *Id.* The Federal Circuit in *Rite–Hite* did nothing more than codify the rule that any damages must be directly and foreseeably caused by a defendant's infringement in order to be compensable.

. Whether PE's infringement of the '143 patent was the reasonably foreseeable cause of any loss to OLT's profit, sales price or share price after it began producing and selling the FT–IR gas cell in 1998 remains a question of fact. Because Yurkerwich analyzed this issue in connection with the fraud claim, his report determined damages attributable to PE's refusal to sign the production agreement with OLT, not attributable to the infringement itself. Nonetheless, plaintiffs are not precluded from presenting additional evidence on this topic at trial, and this will be a question of fact for the jury.

## II. Plaintiff's Objections to Discovery Ruling

■ Plaintiff objects to Magistrate Judge Margolis' Ruling [Doc. # 249] granting defendants' motion to quash three deposition notices issued by OLT. The Court may only "reconsider" a magistrate judge's order on a non-dispositive motion if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Discovery orders generally are non-dispositive. *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990).

### A. Deposition of Daryl Schillemat

Magistrate Judge Margolis quashed plaintiff's deposition subpoena for third-party witness Daryl Schillemat, ruling that this Court had permitted further discovery only on the issue of damages, not on inventorship in connection with defendants' summary judgment motion, which plaintiff

conceded was the motivation for noticing Schillemat's deposition. *See* Ruling at 7. As Judge Margolis found based on the transcript of the status conference of January 10, 2005, this Court's intent was to permit further discovery only on the issue of damages, and therefore Schillemat's deposition is not warranted at this time. However, should Schillemat refuse to appear voluntarily at trial, plaintiff may renew its request to take his deposition as trial testimony.

**B. Deposition of Defendant PE Inc.**

Plaintiff asserts that it requires testimony from PE Inc. to determine whether its new all-metal gas cell, which came on the market during the appeal of this case, infringes the '143 patent. Plaintiff has never before asserted a patent infringement claim against PE Inc. As plaintiff acknowledges, the basis of its original claim against PE Inc. was that its representative, Dr. Robert Hoult, misappropriated OLT's trade secrets in the course of licensing and manufacturing negotiations between the parties. That claim has been dismissed, and plaintiff has not sought to amend its complaint to assert a patent infringement claim against PE Inc. Any infringement claim OLT has against PE Inc. must be the subject of a separate lawsuit. Therefore OLT's objection to Magistrate Judge Margolis's ruling quashing the subpoena for the testimony of PE Inc. is overruled.[1]

**C. Deposition of Sick UPA, GmbH**

Plaintiff seeks the deposition of Sick UPA, GmbH (which has changed its name to Sick Maihak GmbH) to probe the testimony of its managing director concerning the number of infringing devices Sick has imported into the United States. Plaintiff acknowledges that Sick has provided documentary discovery on this issue, and merely seeks to test the diligence and thoroughness with which Sick collected the updated information. As stated above, the Court's intent was to permit damages discovery limited to updating the information already in the parties' possession. Plaintiff can test "the precision, efficacy and diligence" of Sick's data search, *see* Pl. Mem. in Opp. to Def. Mot. for Protective Order [Doc. # 246] at 4, by means of cross-examination at trial. If Sick refuses to provide a representative to testify at trial, OLT may renew its request to take Sick's corporate deposition as trial testimony.

**III. Conclusion**

Accordingly, plaintiff's Objections [Doc. # 250] to the Magistrate Judge's discovery order are OVERRULED at this stage and defendant's Motion to Preclude Plaintiff's Assertion of a New Theory of Patent Damages [Doc. # 238] is GRANTED IN PART AND DENIED IN PART as specified above.

IT IS SO ORDERED.

1. It is unclear to the Court whether plaintiff is asserting that *defendants* induced or are otherwise liable for PE Inc.'s alleged recent infringement. If so, the interest of "secur[ing] the just, speedy, and inexpensive determination of" all of OLT's infringement claims against defendants in one proceeding may be implicated. *See* Fed.R.Civ.P. 1. Plaintiff will be asked to clarify its purpose in seeking the testimony of PE Inc. at a status conference to be scheduled in this case.