**DEVON DISTRIBUTING CORP,**
**d/b/a Carpenter Erosion**
**Control, Plaintiff,**

**v.**

**Arthur E. MINER and A.J. Garrett**
**& Associates, Inc., Defendants.**

**No. 4:02–cv–90518.**

United States District Court,
S.D. Iowa,
Central Division.

Dec. 13, 2007.

Lawrence P. McLellan, Rush Charles Nigut, Sullivan & Ward PC, Brett J. Trout, TROUT PC, Des Moines, IA, for Plaintiff.

Ronald M. Sotak, Timothy J. Zarley, Zarley Law Firm, PLC, Des Moines, IA, Jeffrey L. Goodman, Marcy A. O'Brien, Goodman & Associates, PC, West Des Moines, IA, for Defendants.

Arthur E. Miner, Waukee, IA, Pro Se.

## ORDER

ROBERT W. PRATT, Chief Judge.

### I. FACTUAL BACKGROUND

The present matter was tried before a jury on June 18 and 19, 2007. The facts were largely undisputed, in that the parties agreed that Plaintiff held United States Patent No. 5,915,878 (the "'878 patent") on a silt fence machine.[1] In April 1999, Defendants purchased a silt fence machine covered by the '878 patent for $4,250 [2] from the Plaintiff. In 2002, Thomas Carpenter observed Defendants operating a silt fence machine that had several differences from the one Plaintiff had sold to Defendants. Mr. Carpenter believed that the machine he observed was not the machine originally sold to Defendants, and took pictures of what he believed to be a second silt fence machine. Plaintiff's claim at trial was a single claim of patent infringement. Plaintiff offered pictures at trial of what it claimed were two different silt fence machines: Plaintiff claimed that photos of what was termed the "B machine" were photos of the original silt fence machine Defendants purchased from

---

**1.** Thomas Carpenter, the owner of Devon Distributing Corp. d/b/a Carpenter Erosion Control, applied for a patent on the silt fence machine in January 1997, and was actually issued the '878 patent on June 29, 1999. Mr. Carpenter subsequently assigned the patent to the Plaintiff corporation.

**2.** Trial Exhibit D shows the sales price of the machine as $4,250, though testimony at trial often referred to the purchase price as having been $4,500.

Plaintiff in 1999,[3] while photos of what was termed the "A machine" were photos of a second silt fence machine built and used by Defendants in violation of the '878 patent.

Defendants denied Plaintiff's allegations of infringement, claiming that the "A machine" and the "B machine" were one and the same. Indeed, Defendants argued that the differences observable between the photos of the "A machine" and the "B machine" were simply due to the fact that Defendants had to make several changes and modifications to the silt fence machine that they purchased from Plaintiff. At trial, Defendant Arthur Miner and his son, Ed Miner, testified extensively about the modifications and repairs that caused the silt fence machine Defendants purchased to look so different in the "A" and "B" pictures. The sum of the testimony of both Ed and Arthur Miner, however, was that the "A machine," photographed by Mr. Carpenter in 2002, was simply the "B machine," purchased in 1999 and photographed in 2003, with various modifications and repairs. *See generally* Trial Tr. (testimony of Arthur Miner and Ed Miner).

Plaintiff's counsel introduced at trial evidence that, on January 13, 2003, Ed Miner filed a "Motor Vehicle Theft Report" with the West Des Moines Police Department. Trial Ex. 112. The report stated that a flatbed trailer was stolen and that "the below listed vehicles were on the trailer ... Zetor Tractor ... Silt Fence Machine attached." *Id.* A Madison County Sheriff's Office Report dated May 10, 2003, states that one "silt fence machine," valued at $4500 was recovered by Madison County officers. This raised the question at trial as to how Defendants could have produced their single silt fence machine in February 2003 if that machine had been stolen in January 2003 and not returned until May 2003. Ed Miner testified that the silt

fence machine itself was not stolen in January 2003. Rather, "[w]hen I bought the machine from [Plaintiff], I also bought an attachment that will make the machine usable on skid loaders, and that's what was taken. The machine itself was never taken that time." Trial Tr. at 31. Ed Miner testified that when the police asked him the value of the attachment: "I didn't know the value of it, so I gave them the price of what I paid for the whole machine [$4,500]." *Id.* at 32. When asked at trial why the single silt fence machine was not produced at trial for the jury's inspection, Ed Miner testified that the silt fence machine was unavailable because it was stolen in Ankeny, Iowa in July 2003 and was never recovered. Trial Tr. at 27–30, Trial Ex. J (police report).

As the evidence was presented at trial, there was really only one determination for the jury to make in regard to the patent infringement claim, that is, did Defendants have one silt fence machine or two? Defendants admitted that, should the jury find that there were two silt fence machines, Plaintiff would be entitled to a verdict on its claim of patent infringement. Likewise, Plaintiff conceded that if the jury found there was only one silt fence machine, a verdict in favor of Defendants was proper. The jury obviously concluded that there was only one silt fence machine, as it returned a verdict in favor of Defendants on Plaintiff's claim of patent infringement. *See* Clerk's No. 173. Consistent with the jury's verdict, the Court entered judgment in favor of Defendants on June 22, 2007. Clerk's No. 175.

## II. POST–TRIAL ACTIVITY

On July 2, 2007, Plaintiff filed a Motion for Judgment as a Matter of Law (Clerk's No. 177), arguing that there was no genuine issue of material fact and that Defen-

---

**3.** The photos of the "B machine" were taken on February 28, 2003, when Defendants pro-

duced the machine for photographing during discovery.

dants had infringed the '878 patent as a matter of law. In the alternative, Plaintiff requested that the Court grant a new trial on the basis that the Court erred by refusing to give the jury a spoilation instruction. On July 5, 2007, Defendants filed a Motion for Attorney Fees and Costs, pursuant to 35 U.S.C. § 285.[4] Clerk's No. 178. Specifically, Defendants requested that the Court declare the case exceptional and award them $151,635.88 in costs and attorney fees, on the basis that Plaintiff maintained a frivolous claim construction, applied a flawed infringement analysis, and engaged in a vexatious litigation strategy.

On July 30, 2007, Plaintiff filed an "Amended Motion for Judgment as a Matter of Law."[5] Clerk's No. 188. In that motion, Plaintiff stated that it had definitive evidence that Defendants had two silt fence machines, entitling Plaintiff to judgment as a matter of law. Specifically, Plaintiff asserted that Officer Clayton Allen, the officer who wrote the Madison County Sheriff's Report, referenced *supra*, and admitted at trial as Exhibit 113, took photographs of the items listed in the recovery report as part of his investigation. Clerk's No. 188 at 2. Plaintiff attached the photograph and a supporting affidavit by Officer Allen, which clearly demonstrate that Officer Allen recovered and returned to Defendants in May 2003 a silt fence *machine*, not a silt fence machine *attachment*, as Ed Miner testified at trial. Indeed, the silt fence *machine* appearing in Officer Allen's photograph is virtually identical to the "A machine" photographed by Thomas Carpenter in 2002. This, Plaintiff points out, undeniably demon-

strates that Ed and Arthur Miner lied about the existence of a second machine. On July 30, 2007, Plaintiff also filed a Motion to Vacate the Judgment, pursuant to Federal Rule of Civil Procedure 60(b)(3), arguing that Defendants perpetrated fraud on the Court and the jury by presenting perjured testimony. Clerk's No. 190.

On August 17, 2007, Defendants' trial counsel filed a Motion to Withdraw and for Stay of Proceedings. Clerk's No. 197. In support of this motion, defense counsel filed a "Disclosure by Counsel for Defendants," stating:

> On August 13, 2007, the undersigned [counsel Timothy Zarley and Marcy O'Brien] learned that certain evidence offered by A.J. Garrett & Associates, Inc. at the trial of this matter was false.... The false evidence relates to A.J. Garrett & Associates, Inc.'s denial of the existence of a second silt fence machine. Contrary to evidence presented at trial, in addition to the silt fence machine it purchased, A.J. Garrett & Associates, Inc. constructed a silt fence machine out of parts. A silt fence machine was stolen in January 2003. A.J. Garrett & Associates, Inc. picked up a silt fence machine from a Truro, Iowa, property recovery site in May 2003. In 2003, A.J. Garrett & Associates, Inc. cut up one of the silt fence machines.

Clerk's No. 198.

This Court permitted defense counsel to withdraw, and granted Defendants repeated opportunities to obtain new counsel and to file resistances to Plaintiff's motions.[6] Defendants ultimately did not ob-

---

4. 35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

5. On the same date, Plaintiff filed a resistance to Defendants' Motion for Attorney Fees and Costs, arguing that the motion should be denied given the evidence that Arthur and Ed

Miner lied about the existence of a second machine. Clerk's No. 189.

6. These opportunities are detailed in an Order issued by the Court on November 30, 2007. Clerk's No. 212.

tain new counsel or file resistances to Plaintiff's motions. On November 21, 2007, Plaintiff filed a Motion for Default Judgment as to Defendants. Clerk's No. 211. The Court entered an Order on November 30, 2007, informing Defendants that unless they informed the Court by December 7, 2007 of a desire to pursue the Motion for Attorney Fees and Costs, the motion would be denied. The Court further informed Defendants that unless they filed resistances to Plaintiff's motions by the same date, the Court would grant Plaintiff's pending motions. On December 7, 2007, Defendants filed a document with the Court stating:

> A.J. Garrett & Associates and Arthur E. Miner understand it would be in their best interest to have a lawyer represent them in the matters before this court, however we do not have the funds it would take to do so. We are still trying to pay the lawyers we had before. We understand the courts [sic] has to make dicisions [sic] in the motions before it, we will just have to deal with the ruling as best we can.

Clerk's No. 213. On December 11, 2007, Plaintiff filed a reply, essentially restating its desire to have the Court grant its previously filed motions. As Defendants have been given ample opportunity to obtain counsel and to resist the motions currently pending before the Court, the matters are fully submitted.

### III. LAW AND ANALYSIS

Regarding all of the pending motions, the Court notes that Defendants have not filed responsive pleadings as required by the Local Rules or as required by the orders of this Court. Accordingly, the denial of Defendants' motion and the granting of Plaintiff's motions are warranted and proper under Local Rule 7.1(f), which provides: "If no timely resistance to a motion is filed, the motion may be granted without notice." Additionally, the Court

notes that the corporate Defendant has not had counsel enter an appearance on its behalf, which makes the entry of default judgment against it appropriate.

Furthermore, neither A.J. Garrett & Associates nor Arthur E. Miner have given the Court any reason to disbelieve that Arthur and Ed Miner committed perjury at trial. The evidence proffered by Plaintiff in support of its Amended Motion for Judgment as a Matter of Law, when viewed in conjunction with the trial testimony and evidence, makes clear that Defendants built and used a second silt fence machine that infringed on Plaintiff's '878 patent. Defendants then spent the next several years lying to Plaintiff, the attorneys in this case, the Court, and ultimately the jury about their actions.

### A. *Motion to Vacate Judgment*

 Federal Rule of Civil Procedure 60(b)(3) provides that the court may "relieve a party ... from a final judgment order ... for ... fraud ..., misrepresentation, or other misconduct of an adverse party." Fed.R.Civ.P. 60(b)(3); *see E.F. Hutton & Co., Inc. v. Berns*, 757 F.2d 215, 216–17 (8th Cir.1985) (stating that the burden is on the moving party to establish by clear and convincing evidence " 'that the adverse party engaged in fraud or other misconduct and that this conduct prevented the moving party from fully and fairly presenting its case.' " (quoting *Stridiron v. Stridiron*, 698 F.2d 204, 206–07 (3d Cir. 1983))). Generally, if "unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3)" to vacate a judgment is a proper remedy. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 497 (5th Cir.1995); *see also Abrahamsen v. Trans–State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir.1996) (finding that a Rule 60(b)(3) motion is properly granted where the

court is "reasonably well satisfied that the testimony given by a material witness is false; that, without it, a jury might have reached a different conclusion; that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial")[7]; *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir.1981) (stating that Rule 60(b)(3) "is invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied"). Here, the evidence before the Court clearly establishes that if Ed and Arthur Miner had not perjured themselves at trial, the jury would have reached a decidedly different verdict. Accordingly, the Court vacates the jury's verdict pursuant to Rule 60(b)(3).

### B. *Motion for Judgment as a Matter of Law*

Federal Rule of Civil Procedure 50(a) provides that at any time before a case is submitted to a jury, either party may move for judgment as a matter of law. "If the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed.

R.Civ.P. 50(b). In ruling on a renewed motion for judgment as a matter of law pursuant to Rule 50(b), the Court may "(A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law." Fed.R.Civ.P. 50(b)(1). Further, in considering the post-verdict renewed motion for judgment as a matter of law, the trial court is:

> (1) to consider the evidence in the light most favorable to the … parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved … in favor of the prevailing parties; (3) to assume as proved all facts which the prevailing parties' evidence tends to prove; (4) to give the prevailing parties the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusion to be drawn from it.

*Voegeli v. Lewis*, 568 F.2d 89, 92 (8th Cir.1977) (quoting *Griggs v. Firestone Tire & Rubber Co.*, 513 F.2d 851, 857 (8th Cir. 1975)). Accordingly, the Court must focus its analysis on "whether or not the record contains evidence sufficient to support the jury's verdict." *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 863 (8th Cir.2004).

---

7. The Court does note that Plaintiff has offered no indication why it was unable to find out that Officer Allen took a photograph of the silt fence machine recovered in May 2003 prior to the trial in this matter.

> The very purpose of a trial is to test the truthfulness of testimony and other evidence proffered by the parties. Examining the possibility that testimony is perjurious is one of the principal functions of cross-examination. Rule 60(b) should not reward the lazy litigant who did not adequately investigate his or her case, or who did not vigorously cross-examine a witness.

*Dixon v. C.I.R., Tax Court Memo*, 1999 WL 171398, at *111 (Tax Court Mar. 30, 1999)

(overturned on other grounds) (citing 12 Moore's Federal Practice, § 60.43[1][c], at 60–131 to 60–132 (3d ed.1998)). Regardless of whether Plaintiff *should* have been able to find out that Officer Allen had a photograph of the recovered property, however, the fact remains that Rule 60(b)(3) is "aimed at judgments which are unfairly obtained, not at those which are factually incorrect." *Diaz*, 46 F.3d at 496. There can be no doubt that the judgment, as it currently stands, was unfairly obtained in light of Ed Miner's and Arthur Miner's perjury. Nonetheless, should Plaintiff opt to pursue attorney's fees in this case, Plaintiff should address this issue in its submissions to the Court.

" 'Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining [the prevailing party's] position.' " *Id.* (quoting *Racicky v. Farmland Indus., Inc.*, 328 F.3d 389, 393 (8th Cir.2003)); *see also Top of Iowa Co-op. v. Schewe*, 324 F.3d 627, 633 (8th Cir.2003) (" 'Post-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict.' ") (quoting *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000)). In making this evaluation, the Court must be mindful that " '[a] mere scintilla of evidence is inadequate to support a verdict,' and judgment as a matter of law is proper when the record contains no proof beyond speculation to support the verdict." *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 701 (8th Cir.2004) (quoting *Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir.1996) (en banc)).

In this case, the record unequivocally support a conclusion that the only evidence supporting the jury's verdict in this matter was the testimony of Ed and Arthur Miner, which has now been shown to have been false. Viewing the evidence presented at trial, coupled with the now undisputed evidence that Defendants built and used a second silt fence machine, it is clear that judgment as a matter of law in favor of Plaintiff is warranted on Plaintiff's claim of patent infringement. Accordingly, Plaintiff's various motions for judgment as a matter of law are granted.

### 1. *Compensatory damages.*

Plaintiff has requested that the Court award $3,825 in damages as compensation for Defendants' infringement of the '878 patent. Trial Exhibit B shows that Defendants purchased the "B machine" from Capital City Equipment for $4,250 in April 1999. Thomas Carpenter testified that he sold that same machine to Capital City Equipment for approximately $3,825. *See* Trial Tr. at 126. Plaintiff asserts that the compensatory damages requested represent "the amount of lost profits Plaintiff would have received in 2002 had Defendants purchased a second Tommy machine instead of building an infringing machine." Pl.'s Mot. for Default at 4. Mr. Carpenter's testimony at trial, however, reveals that he incurred approximately $960[8] in materials costs and approximately $400 in labor costs to build each silt fence machine. Trial Tr. at 126–27. Further, Defendants offered evidence that in 1999, Plaintiff sold 88 silt fence machines and incurred $50,000 in trade show costs. Defendants' reasoning was that Plaintiff's profit margin must be reduced by the per unit cost of trade show participation, that is, by approximately $568 per unit. Thus, Plaintiff's profit on an additional silt fence machine could not be more than the wholesale price, $3,825, less the material, labor and advertising costs incurred to build and market the machine, which total approximately $1,928. This leaves a profit margin of $1,897. Accordingly, the Court awards Plaintiff compensatory damages in the amount of $1,897, representing net lost profits.[9]

---

**8.** Mr. Carpenter testified at trial that he believed the material costs were $800. However, he apparently testified previously that the material costs were $960. Trial Tr. at 126 ("Q. What are your material costs when you build a Tommy silt fence machine? A. Around $800. Q. Do you recall testifying before that you believe that amount to be $960? A. Sure."). Since Mr. Carpenter later agreed that defense counsel's approximation of net profits was accurate, the Court will use the $960 figure. *See infra* FN9.

**9.** This calculation is supported by Mr. Carpenter's testimony:

Q. So when I walk through the numbers that you've given me as far as your costs, we have material costs of approximately $960, we have labor costs of $400, we have marketing and advertising costs of—

### 2. Willfulness and additional damages.

Plaintiff urges the Court to find that Defendants willfully infringed Plaintiff's '878 patent as a matter of law. To find that Defendants willfully infringed Plaintiff's patent as a matter of law, it must be proved, by clear and convincing evidence, that Defendants had actual knowledge of Plaintiff's patent and that Defendants had no reasonable basis for believing that the "A machine" they constructed did not infringe Plaintiff's patent. *See* Court's Final Jury Inst. No. 26; *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1531–32 (Fed.Cir.1993).

The evidence before the Court satisfies the test. As to whether Defendants had knowledge of the patent, Mr. Carpenter testified that any silt fence machine sold prior to the '878 patent actually being issued had a sticker "on the front right-hand corner" stating "patent pending." Trial Tr. at 25. Additionally, the testimony of Arthur Miner indicates that, after receiving notice that their silt fence machine might infringe on Plaintiff's patent, Defendants nonetheless continued to use the machine. *See* Trial Tr. at 65–66. As to whether Defendants had any reasonable basis to believe that the machine they constructed out of spare parts did not infringe, it is clear they did not. Indeed, the fact that Defendants lied about the existence of the second machine throughout and even before the present proceedings evidences their knowledge that the second machine infringed on Plaintiff's patent.

■ Title 35, United States Code § 284 provides that upon a finding for the claimant in a patent infringement suit, a court may increase damages suffered as a result of the infringement by up to three times the amount of damages found. The determination of whether treble damages should be awarded is entirely within the Court's discretion. *See Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125–26 (Fed. Cir.1987). A finding of willfulness is alone sufficient to support an award of increased damage, *see Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 628 (Fed.Cir.1985), though a finding of willfulness does not mandate a trebling of damages. *Rite–Hite*, 819 F.2d at 1126. On the facts before it, the Court finds that a trebling of damages is warranted. Accordingly, the Court trebles the compensatory damage amount of $1,897 to $5,691.

### 3. Interest.

■ The United States Supreme Court has found that prejudgment interest, from the date of infringement to the date of judgment, "should ordinarily be awarded" in patent infringement actions. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *see also Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1066 (Fed.Cir.1983). Where, as here, however, the compensatory damage award has been trebled, "prejudgment interest cannot be assessed on the increased or punitive portion of the damage award." *Lam*, 718 F.2d at 1066. This is because "[p]rejudgment interest is

rounded off to $570, and no allocation of overhead. When I add up those numbers without the overhead, I come to a figure of $1,930, and that's without the overhead. And you had mentioned that your sales price was 3,825. So between that, we're looking at a difference of approximately $1,800; is that correct?

A. On that calculation.

Q. And so that's—you know, I realize we don't have the documents that support this, but that would be a rough estimate of, perhaps, the profit that you made on that one machine?

A. Well, we didn't use—that was sort of an unusual situation where Capital City sold it, probably, but I guess it's an approximation of net profit.

awarded to compensate for the delay in payment of the damages, and not to punish the infringer." *Id.* The determination of whether such interest is warranted, and the rate of interest, is within the ambit of the court's discretion. *Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1144 (Fed. Cir.1991). This discretion includes the method of compounding. *See Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 829 (Fed.Cir.1989). Typically, however, "an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been" were it not for the infringement. *General Motors,* 461 U.S. at 655, 103 S.Ct. 2058.

In this case, the Court finds an award of prejudgment interest appropriate. Accordingly, Defendants shall pay Plaintiff prejudgment interest on the compensatory damage award of $1,897 from June 20, 2002, the date when Plaintiff first requested that Defendants stop using the infringing silt fence machine,[10] to the date that the Clerk enters judgment in favor in Plaintiff in this action. Prejudgment interest shall be computed on a daily basis using the prime rate in effect on the date of judgment, and shall be compounded annually.

## C. *Defendants' Motion for Attorney Fees and Costs*

Defendants' Motion for Attorney Fees and Costs, pursuant to 35 U.S.C. § 285, claiming that Plaintiff maintained a frivolous claim construction, applied a flawed infringement analysis, and engaged in a vexatious litigation strategy, is utterly without merit in light of the fact that, at all times, Defendants have falsely denied the existence of a second silt fence machine. Accordingly, the motion is DENIED.

**10.** *See* Trial Ex. K.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Attorney Fees and Costs (Clerk's No. 178) is DENIED. Plaintiff's Motion for Judgment as a Matter of Law (Clerk's No. 177) is GRANTED. Plaintiff's Amended Motion for Judgment as a Matter of Law (Clerk's No. 188) is GRANTED. Plaintiff's Motion to Vacate Judgment (Clerk's No. 190) is GRANTED. Plaintiff's Motion for Default Judgment (Clerk's No. 211) is GRANTED IN PART and DENIED IN PART, consistent with the terms of this Order. The Clerk of Court is instructed to vacate the jury's verdict in favor of Defendants, enter judgment in favor of Plaintiff, and enter an award of damages in favor of Plaintiff in the amount of $5,691. The Clerk shall also enter an award of pre-judgment interest in favor of Plaintiff on the amount of $1,897, from June 20, 2002 to the date that judgment is entered, calculated on a daily basis using the prime rate in effect on the date of judgment, and compounded annually. Defendants shall pay post-judgment interest on the entire damages award of $5,691 from the date of judgment until the date paid, in accordance with 28 U.S.C. § 1961(a).

IT IS SO ORDERED.