**CHESA INTERNATIONAL, LTD., Plaintiff,**

v.

**FASHION ASSOCIATES, INC., et al., Defendants.**

**No. 75 Civ. 3522 (LFM).**

United States District Court, S. D. New York.

Jan. 24, 1977.

Ladas, Parry, Von Gehr, Goldsmith & Deschamps, New York City, for plaintiff by Paul B. Morofsky, James N. Palik and Robert Alpert, New York City.

Robert Rattet, New York City, Krugman, Chapnick & Grimshaw, Paterson, N. J., for defendants by Matthew M. Keshishian, Paterson, N. J.

MacMAHON, District Judge.

Plaintiff moves, pursuant to Rule 53(e)(2), Fed.R.Civ.P., to confirm the report of Special Master Douglas F. Eaton, Esq. We grant the motion and confirm the Special Master's report in all respects.

On July 28, 1975, we found that defendant Fashion Associates, Inc. ("Fashion Associates") had infringed the Givenchy "G" emblem, a trademark licensed to plaintiff, and a preliminary injunction was issued. On October 21, 1975, we issued a permanent injunction on consent enjoining Fashion Associates and persons in active concert with it from using the Givenchy "G" emblem or colorable imitation of it. On June 8, 1976, we found that Fashion Associates, Hong Kong Quality Knitters Ltd., Jerome Finkelstein and Ethel Finkelstein had violated the order of October 21, 1975 and were in contempt of court. We also amended the judgment of October 21, 1975 so as to provide for damages which plaintiff had conditionally waived, and we appointed the Special Master to determine plaintiff's damages.

The Special Master found that plaintiff had sustained damages of $18,105.00 based on defendant Fashion Associates' profits on sales of T-shirts bearing the "G" emblem prior to October 21, 1975, plus $2,586.00 based on all defendants' profits on their contemptuous sales from October 21, 1975 through June 8, 1976. The Special Master also recommended the imposition of sanctions under Rule 37(b)(2)(B) and the award of certain of plaintiff's attorneys' fees in the amount of $2,885.00.

Defendants object to the Special Master's findings of fact in every instance "because they are based on a misapprehension of the evidence." Rule 53(a)(2) plainly provides, however, that: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." We conclude that the Master's findings here, far from being "clearly erroneous," are amply supported by the record, and we adopt those findings as our own.

The Special Master's report and the record of proceedings before him are replete with references to defendants' dilatory, obstructive and generally uncooperative behavior on discovery matters. The Master found that defendants had agreed, and were ordered, to provide information concerning their embroidering and customers, all documents supporting any element of cost or deduction claimed by defendants, and certain other relevant information.

Defendants never did provide all the information sought, and what they did eventually produce was after significant delay and, as the Master found, without adequate excuse. The material sought was neither voluminous nor difficult to produce, and the delaying tactics engaged in by defendants upset and hindered the orderly and expeditious resolution of this matter.

In response to defendants' foot-dragging and evasive attitude on discovery, plaintiff was forced to move for sanctions under Rule 37, Fed.R.Civ.P. Under Rule 53(d)(2), parties who fail, without adequate

excuse, to appear or provide evidence in Special Master proceedings, are subject to the same "consequences, penalties, and remedies provided in Rules 37 and 45." The Master found, and we agree, that there was no adequate excuse for the delay and that defendants should not be allowed to introduce evidence of cost or deduction in computing their profits. Rule 37(b)(2)(B), Fed. R.Civ.P.

Although not relevant to their failure to produce information on cost or deduction, defendants contend that their non-cooperation on discovery was justified. They now contend that the motion for sanctions should not have been granted, primarily because the requirement of information as to *all* of defendants' embroiderers and customers, regardless of their involvement with the Givenchy "G" emblem, was overly broad and would confer an unfair competitive advantage on plaintiff.

We note initially that the Master's order to produce this information included a protective provision that the data would be for the use of plaintiff's attorneys *only* and could not be divulged to their client or anyone not in the employ of the law firm. Under a protective order, the names of customers is a proper subject for discovery. *La Chemise Lacoste v. General Mills, Inc.,* 53 F.R.D. 596, 605 (D.Del.1971), *aff'd on other issues,* 487 F.2d 312 (3d Cir. 1973). The same principle applies to the embroiderers here, and we believe the protective provision to be entirely adequate for the protection of defendants' competitive position.

Secondly, we note that defendants failed or refused to apply to the Master or to the court for any other protective order they deemed necessary, pursuant to Rule 26(c), Fed.R.Civ.P.

Finally, it is significant that plaintiff's need for broad discovery was precipitated by defendants' own actions and bookkeeping practices. Defendants continually asserted that their invoices and records referred only to various types of women's clothing shipped to customers and were not specific as to the emblems embroidered on the clothing. Defendants were only willing to identify those customers to whom defendants could "recall" selling items with the Givenchy emblem, and even then they supplied invoices relating to customers of whom plaintiff was already aware. Furthermore, when confronted with evidence obtained by plaintiff directly from a customer, defendants attempted to deceive the Special Master and plaintiff by representing as genuine a fabricated invoice "reconstructed" from Jerome Finkelstein's memory.

Under these circumstances, it was relevant and necessary to require information as to *all* of defendants' embroiderers and customers so that plaintiff's attorneys could, under the protective order, attempt a meaningful investigation and analysis of defendants' sales of garments with the Givenchy emblem. It was also relevant and necessary to require production of information about Finkelstein's participation in other businesses, since the injunction applied not only to defendants but also to their "attorneys and all persons in active concert and/or participation with them. . . ." In view of Finkelstein's violation of the order of October 21, 1975 through the formation of Hong Kong Quality Knitters Ltd., of which he was admittedly the sole employee, it was appropriate and necessary to inquire into the possibility of other such attempts.

In any event, there was no excuse for failing to produce the cost or deduction data forthwith. Accordingly, we agree with the Special Master that the preclusion of defendants' evidence of cost or deduction was warranted under the circumstances, and the Master's imposition of such a sanction was correct.

In addition, the Special Master recommended the award of $2,885.00 for plaintiff's attorneys' fees occasioned by defendants' conduct. We concur with the Special Master's finding that the award of counsel fees is appropriate here, for defendants' failure to comply with the Special Master's order was not "substantially justi-

fied," nor do other circumstances "make an award of expenses unjust." Rule 37(b)(2), Fed.R.Civ.P. We also affirm the Special Master's finding that defendants' attorney, Matthew Keshishian, should be held jointly and severally liable for the expense award, because he was the attorney advising the party failing to obey the order, because the Master found that he "contributed significantly to the pattern of delay and defiance," and because there appear no other circumstances making such an award unfair or unjust. Rule 37(b), Fed.R.Civ.P.

We turn now to plaintiff's proof and the Special Master's findings on damages.

Defendants eventually produced, under the Special Master's direction, eleven invoices purportedly representing every sale that possibly included items with the Givenchy emblem or imitation. Plaintiff chose to rely on those invoices, plus one other obtained by plaintiff, for proof of defendants' profits. The Special Master included ten of these twelve invoices in the computation.

■ Defendants contend that the invoices referred only to various types of women's garments, and not all of those contained the Givenchy emblem. Defendants could offer only a vague recollection that approximately 25% of the invoiced articles contained the Givenchy emblem. This contention is disposed of by the well-known and ancient doctrine that when a party frustrates proof of damages, either by withholding facts or through inaccurate record-keeping, any doubts about the actual assessment of damages will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value. *Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.,* 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222 (1912); *Deering, Milliken & Co. v. Gilbert,* 269 F.2d 191 (2d Cir. 1959); *Shapiro, Bernstein & Co. v. Remington Records, Inc.,* 265 F.2d 263, 271–73 (2d Cir. 1959) (Burger, C. J.). See also *Armory v. Delamirie,* 1 Strange 505, 93 Eng.Rep. 664 (1722).

■ Accordingly, the Special Master was correct in computing defendants' profits on the basis of those sales which possibly infringed plaintiff's mark, where defendant was unable to elicit satisfactory evidence that not all those sales were infringing. And since defendants refused to produce, and later were precluded from introducing, evidence of cost or deduction, defendants are liable for the full invoiced sales prices. We find, as the Special Master found, that those sales amounted to $18,105.00 prior to October 21, 1975, and $2,586.00 between October 21, 1975 and June 8, 1976.

■ We also approve as fair, reasonable and adequate the Special Master's application for fees in the total amount of $5,875.00, representing 58.75 hours at the hourly rate of $100.00, to be borne by defendants. In answer to defendants' objection to this amount, we note that the Master chose not to charge for considerable amounts of his time, and that the figure would undoubtedly have been much lower but for defendants' obstructive conduct, for which they have only themselves to blame.

Accordingly, we grant plaintiff's motion to confirm the Special Master's report in all respects, and we approve the Special Master's fee application in the amount of $5,875.00.

Settle an appropriate judgment and order, in accordance with the foregoing, within ten (10) days.