Tamko Roofing v. Ideal Roofing        CV-99-388-JD  10/19/00
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Tamko Roofing Products, Inc.

     v.                              Civil No. 99-388-JD
                                     Opinion No. 2000 DNH 219
Ideal Roofing Company, Ltd.


                            O R D E R


     By order dated August 21, 2000, the court awarded the

plaintiff, Tamko Roofing Products, monetary damages in the form

of the defendant's profits on sales in the United States of its

"Heritage Series" product pursuant to 15 U.S.C. § 1117(a).  The

court ordered the defendant, Ideal Roofing Company, to submit

evidence of the costs of its sales by September 8, 2000.  Tamko

was given until September 20, 2000, to respond.  Ideal filed a

report on profits on September 8 (document no. 95), and Tamko

filed an opposition on September 20 (document no. 99).  Tamko

also filed a motion to strike the "Review Engagement Report"

attached to Ideal's report on profits (document no. 98), and

Ideal objects to this motion.


A.   Amount of Gross Sales

     In its order dated August 21, 2000, the court found that

Ideal's gross sales in the United States of its "Heritage Series"

product from November of 1997 through February 29, 2000, amounted

to $503,464 in American dollars. The court derived this figure from Ideal's response to an interrogatory. In its report on profits, Ideal now claims that the accurate figure is $371,913. Ideal's vice president, Rene LaPlante, affirms that he relied on a print-out containing figures in Canadian dollars when he prepared his interrogatory responses and erroneously reported the figures in American dollars. LaPlante claims he did not discover the error until preparing the report on profits. Ideal has not submitted the print-out to the court.

In its objection to Ideal's report, Tamko notes that LaPlante testified at an earlier hearing that Ideal sold approximately $500,000 American dollars of "Heritage Series" products yearly in the United states. See Prelim. Inj. Hr'g Tr. (document no. 36) at 112-13. Joel Cauley, Ideal sales representative, testified at trial that sales in a portion of the United States of "Heritage Series" products were between $700,000 and $800,000 yearly, in American dollars. See Test. of Joel Cauley (document no. 91) at 87. Ideal has not supplied the court with direct documentary evidence of its actual sales, such as computer records or sales receipts.

While the burden is on the plaintiff to prove the defendant's gross sales, a plaintiff relies on the defendant's discovery responses to produce reliable evidence of those sales.

2

If the defendant "controls the most satisfactory evidence of sales" and refuses to make such evidence available to the plaintiff, or fails to keep adequate records, the plaintiff "needs only establish a basis for a reasoned conclusion" concerning the amount of sales. Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985); see Chesa Int'l, Ltd. v. Fashion Assocs., Inc., 425 F. Supp. 234, 238 (S.D.N.Y. 1977). A reasoned conclusion may be based on statements made by the defendant. See Louis Vuitton, 765 F.2d at 973 (upholding use of defendants' statements on videotape as proof of sales). Where the defendant fails to counter the plaintiff's evidence of sales with sufficiently reliable evidence, "the court must rely on less certain methods of proof." Id. "Moreover, when the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer." Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983) (discussing damages in patent case); H-D Michigan Inc. v. Biker's Dream Inc., 48 U.S.P.Q.2d (BNA) 1108, 1113 (C.D. Cal. 1998).

Ideal's vice president and sales representative both testified that Ideal's United States sales of its "Heritage Series" product were considerably higher than the figure Ideal now asserts is accurate. Despite being given numerous

3

opportunities to produce documentary evidence of its sales, Ideal has consistently failed to do so. Without more concrete evidence, the court resolves the inconsistencies in Ideal's statements against Ideal, and does not amend its earlier assessment of Ideal's gross profits. Ideal is left with the consequences that flow from its lack of diligence in this matter.

B.   <u>Amount of Costs and Motion to Strike</u>

Ideal attaches to its report on profits a "Review Engagement Report" prepared by an accounting firm. A letter on the accounting firm's letterhead addressed to Ideal's Board of Directors states that the firm reviewed Ideal's statement of earnings but did not conduct an audit, and concludes that the statement of earnings appears to be in accordance with generally accepted accounting principles. A second page lists gross sales of Ideal's "Heritage Series" product sold in the United States, as well as various costs, resulting in a net loss to Ideal.

Tamko moves to strike the report on the grounds that it is irrelevant, hearsay, inadmissible as an expert opinion, and noncompliant with the court's local rules. Ideal contends that the report is submitted merely to show that its method of subtracting certain categories of expenses from gross sales is proper, and not to show that the amounts allocated to those

4

categories are accurate.

The defendant's burden of proving costs requires it to produce documentary evidence, such as cancelled checks and invoices, that proves the amount of the costs and ties those costs to sales of the infringing product. See, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) (testimony of defendant plus "smattering of bills" "of no probative value" and insufficient to prove deductible costs); H-D Michigan, 48 U.S.P.Q.2d (BNA) at 1114; Project Strategies Corp. v. National Communications Corp., 948 F. Supp. 218, 221 (E.D.N.Y. 1996); Playboy Enters., Inc. v. Dumas, 831 F. Supp. 295, 319 (S.D.N.Y. 1993). Ideal has provided no direct documentary evidence, relying instead on a summarized statement of earnings without any underlying documentation supporting the accuracy of that statement. Without supporting evidence, the statement of earnings is inadmissible for the purpose of proving the amount of deductible costs Ideal incurred. See H-D Michigan, 48 U.S.P.Q.2d (BNA) at 1113-14; see also Fed. R. Evid. 1006; Air Safety, Inc. v. Roman Catholic Archbishop of Boston, 94 F.3d 1, 8 (1st Cir. 1996) (discussing Rule 1006's requirement that underlying information be made available in order for summary to be admissible).

Ideal argues that the report establishes that Ideal's method

of calculating its deductible costs is appropriate. However, Ideal's burden at this stage of determining damages is to provide the court with direct documentary evidence of its costs, not a completed calculation or total of its costs without supporting evidence. For these reasons, the "Review Engagement Report" submitted by Ideal is not probative evidence of its deductible costs. To the extent the report shows that Ideal consulted an accountant in performing its own calculation of its costs, that fact is irrelevant to the court's assessment of damages. Tamko's motion to strike the "Review Engagement Report" is granted.

As discussed above, Ideal has failed to submit satisfactory evidence of its costs. Under these circumstances, the court may award the plaintiff the entire amount of the defendant's gross sales of the infringing product. See Bambu Sales, 58 F.3d at 854; H-D Michigan, 48 U.S.P.Q.2d (BNA) at 1115; Chesa, 425 F. Supp. at 238. Alternatively, the court may estimate the defendant's costs based on the information already in the record. See BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1095 (7th Cir. 1994); Tonka Corp. v. Tonk-A-Phone, Inc., 805 F.2d 793, 794 (8th Cir. 1986); A & M Records, Inc. v. Abdallah, 948 F. Supp. 1449, 1459 (C.D. Cal. 1996).

Considering that Ideal must have incurred some costs in selling the infringing product in the United States, the court

6

declines to award Tamko the full amount of gross sales. The record reveals little evidence upon which to base an estimate of Ideal's deductible costs. However, LaPlante previously testified that Ideal's profit margin on sales of its "Heritage Series" product is 40%. See Report and Recommendation, May 15, 2000, at 7. The court therefore estimates that Ideal's deductible costs amounted to 60% of its gross profits and awards Tamko 40% of the gross profits, or $201,385.60.

## Conclusion

The plaintiff's motion to strike (document no. 98) is granted. The plaintiff is awarded compensatory damages in the amount of $201,385.60.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

October 19, 2000

cc:  Teresa C. Tucker, Esquire
     Christopher R. Benson, Esquire
     Michael B. Clapp, Esquire
     George R. Moore, Esquire

7