**MASSEY COAL SERVICES, INC.,** Aracoma Coal Company, Inc., Marfork Coal Company, Inc., Performance Coal Company, Independence Coal Company, Inc., Long Fork Coal Company, and Elk Run Coal Company, Inc., Plaintiffs,

v.

**VICTAULIC COMPANY OF AMERICA,** and Aquamine, LLC, Defendants,

and

Aquamine, LLC, Defendant and Third-party Plaintiff,

v.

Available Plastics, Inc., North American Pipe Corp., Rubbermill, and Chem–Solv, Inc., Third-party Defendants,

and

Chem–Solv, Inc., Third-party Defendant and Fourth-party Plaintiff,

v.

General Electric Company, and Momentive Performance Materials, Inc., Fourth-party Defendants.

No. 2:06–cv–00535.

United States District Court, S.D. West Virginia, Charleston.

April 21, 2008.

David A. Barnette, Erin Elizabeth Magee, Jonathan L. Anderson, Jackson Kelly, Charleston, WV, for Massey Coal Services, Inc., Aracoma Coal Company, Inc., Marfork Coal Company, Inc., Performance Coal Company, Independence Coal Company, Inc., Long Fork Coal Company, and Elk Run Coal Company, Inc.

Laurie K. Miller, Jackson Kelly, Charleston, WV, for Massey Coal Services, Inc.

Brian A. Glasser, Christopher S. Morris, Rodney Arthur Smith, H.F. Salsbery, Bailey & Glasser, Charleston, WV, for Victaulic Company of America, and Aquamine, LLC.

Mary H. Sanders, Michael P. Addair, Patrick T. White, Huddleston Bolen, Charleston, WV, for Chem–Solv, Inc. and Rubbermill.

David K. Hendrickson, Hendrickson & Long, Charleston, WV, for General Electric Company.

Lora A. Arthur, Hendrickson & Long, Charleston, WV, for General Electric Company and Momentive Performance Materials, Inc.

George A. Halkias, Martin & Seibert, Charleston, WV, E. Kay Fuller, Martin & Seibert, Martinsburg, WV, for Available Plastics, Inc.

Bradley M. Whalen, Stephen H. Lee, Doyle Restrepo Harvin & Robbins, Houston, TX, David F. Nelson, Francis Nelson & Brison, G. Kenneth Robertson, Kimberly A. Martin, Stacy A. Jacques, Farmer Cline & Campbell, Charleston, WV, for North American Pipe Corp.

## MEMORANDUM OPINION AND ORDER

MARY E. STANLEY, United States Magistrate Judge.

The court is called upon to decide, pursuant to Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, whether defendants Aquamine and Victaulic ("Defendants") have shown good cause for certain documents, marked "CONFIDENTIAL" prior to disclosure to Plaintiffs during discovery, to remain confidential and subject to the court's form protective order.

This action concerns PVC pipe purchased by Plaintiffs from Defendants for use in Plaintiffs' coal mines. According to the Plaintiffs, the couplings which joined lengths of pipes together failed, causing water leakage, suspension of Plaintiffs' mining operations, and economic injury. (Complaint, docket # 1, at 4.) The Complaint contains five counts: breach of contract, breach of express warranty, breach of implied warranty, breach of duty of good faith and fair dealing, and intentional misrepresentation.

Defendant Aquamine filed a third-party complaint against various pipe suppliers and against RubberMill, which produces and sells rubber O-rings. (# 56.) O-rings are used at pipe joint couplings to prevent water leakage. RubberMill has not entered an appearance, although it was served through the Secretary of State. (# 61.) The Clerk has entered default as to RubberMill. (# 118.)

According to Plaintiffs, the pipe couplings began to fail in early 2004. (Complaint, # 1, ¶ 16, at 4.) Despite following Defendants' suggestions to hang pipes from the ceiling of the mines, and to install "pop off" valves, the pipe couplings continued to fail. Id., ¶¶ 18–20, 26, at 4–5. Plaintiffs and Defendants had discussions about the failures in 2004 and 2005; ultimately Plaintiffs replaced the pipe couplings. Id., ¶ 30, at 6.

The Complaint alleges that defendant Victaulic "refused to provide any information regarding the cause of the problems with the pipe couplings, despite its admitted knowledge of the problem." Id., ¶ 26, at 5. Plaintiffs complain that in July, 2005, defendant Aquamine acknowledged "that 'a batch' of their products was defective and contained a condition causing the pipe's ability to react to stress to be reduced." Id., ¶ 27, at 5–6. Yet, according to Plaintiffs, "Victaulic and/or Aquamine has continued to refuse to tell Plaintiffs how many batches of pipe couplings were affected with this defect or how to identify pipe or couplings that may have been part of the defective batches." Id., ¶ 28, at 6. In the fifth count alleging intentional misrepresentation, Plaintiffs claim that "[b]y continually failing to provide any information to

Plaintiffs with respect to the nature and extent of the defects with its pipe couplings, Victaulic and/or Aquamine have intentionally misrepresented the condition of its pipe and couplings to Plaintiffs." *Id.,* ¶ 77, at 13.

The parties submitted to the court for entry, and on February 21, 2007, the court entered, a form Protective Order. (# 37.) This Protective Order (which has since been modified by the District Judges) was available to all litigants on the court's website at www.wvsd.uscourts.gov. The Protective Order is a so-called "umbrella" order,[1] with the following pertinent provisions:

It is hereby ORDERED as follows:

1. If a party or an attorney for a party has a good faith belief that certain documents or other materials (including digital information) subject to disclosure pursuant to a discovery or other request, are confidential and should not be disclosed other than in connection with this action and pursuant to this Protective Order, the party or attorney shall mark each such document or other material as "CONFIDENTIAL."

2. If a party or an attorney for a party disputes whether a document or other material should be marked "CONFIDENTIAL," the parties and/or attorneys shall attempt to resolve the dispute between themselves. If they are unsuccessful, the party or attorney challenging the "CONFIDENTIAL" designation shall do so by filing an appropriate motion.

3. No party or attorney or other person subject to this Protective Order shall distribute, transmit, or otherwise divulge any document or other material which is marked "CONFIDENTIAL," or the contents thereof, except in accordance with this Protective Order.

4. Any document or other material which is marked "CONFIDENTIAL," or the contents thereof, may be used by a party, or a party's attorney, expert witness, consultant, or other person to whom disclosure is made, only for the purpose of this action. Nothing contained in this Protective Order shall prevent the use of any document or other material which is marked "CONFIDENTIAL," or the contents thereof, as evidence at trial, or at any deposition taken in this action.

(Protective Order, # 37, at 1–2.)

In February, 2008, during discovery concerning the cause of the pipe couplings' failures, Defendants disclosed four documents to Plaintiffs, each of which was marked "CONFIDENTIAL," pursuant to the Protective Order. Defendants describe the four documents as follows:

· an email identifying a lot number of an Aquamine product;

· an internal timeline created by Victaulic personnel which identifies the date upon which certain testing identified the presence of a phthalate plasticizer in an O-ring submitted for testing to an outside laboratory;

· a meeting notice to discuss the phthalate issue; and

· an email in which an Aquamine employee described a conversation with an outside salesman for an O-ring supplier in which the salesman told the Aquamine employee that O-rings sold to Aquamine could not contain plasticizers, process aids, or chemicals that could deteriorate PVC because such additives "would harm a human through consumption making FDA and/or NSF approval impossible."

(Defendants' Brief, # 182, at 2–3.)

Plaintiffs promptly advised Defendants that Plaintiffs disputed the "CONFIDENTIAL" marking on the four documents. When they were unable to resolve their dispute, Plaintiffs filed a Motion to Allow Release of Certain Discovery Materials Marked Confidential (# 149), attached the four documents at issue as exhibits 1 through 4, and submitted a supporting memorandum (# 150). In their memorandum, at page three, Plaintiffs declare their concern that the documents show the presence of di-octyl phthalate ("DOP," a plasticizer) in pipes which carry water for human consumption in Bedford County, Virginia. According to comments made at the hearings, the DOP is

---

**1.** "Umbrella orders provide that all assertedly confidential material disclosed (and appropriately identified, usually by stamp) is presumptively protected unless challenged." *Manual for Complex Litigation,* § 11.432, at 64 (4th ed.2004).

suspected of causing the PVC pipe couplings to fail. Plaintiffs wish to disclose the documents to the Bedford County Public Service Authority, and possibly others. (# 149.)

On March 7 and 14, 2008, the court conducted hearings on Plaintiffs' Motion. (# # 167, 175.) Plaintiffs and Defendants submitted memoranda. (# # 171 and 172.) At the hearing on March 14, 2008, the parties and the court agreed that the first step is to decide whether Defendants can justify their claim for protection of the documents, by marking them as "CONFIDENTIAL." (Tr. Mar. 14, 2008, # 189, at 27–28.) The parties undertook another round of briefing, which is now completed (# # 182, 190, 196), and the matter is ripe for decision. No party has moved to seal the documents. If the court determines that the documents were appropriately marked as "CONFIDENTIAL," then the court will decide whether the designation should remain.

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: * * * (G) requiring that a trade secret or other confidential ... commercial information not be revealed or be revealed only in a specified way." Although the procedural posture of this case is a motion filed by Plaintiffs, the positions of the parties are the same as if Defendants had filed a motion for protective order.

The court's Local Rules address protective orders as follows:

**LR Civ P 26.4 Protective Orders and Sealed Documents**

(a) Protective Orders

If a party, or parties jointly, seek entry of a protective order to shield information from dissemination, the movant or movants must demonstrate with specificity that (1) the information qualifies for protection under FR Civ P 26(c), and (2) good cause exists for restricting dissemination on the ground that harm would result from its disclosure.

Defendants argue in their opening brief that they show "good cause," as required by Rule 26(c)(1) in that public disclosure of the four documents "will tend to injure the reputation of Aquamine and Victaulic," and "provide a misleading picture, one apparently designed to suggest (unfairly) to customers of Aquamine that Aquamine and Victualic both provided false information to a customer and failed to provide information of import to public health to that customer." (# 182, at 6.) They assert that "severe economic damage could result from the dissemination of this information." *Id.* Defendants rely on *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), for the proposition that it is appropriate for courts to protect a producing party's privacy and reputation. *Id.* at 5.

Plaintiffs respond that Defendants have failed to meet their burden of justifying protection for the four documents. (# 190, at 2.) They argue that Defendants' claims of embarrassment and economic injury lack any legal authority to support continued confidentiality. *Id.* at 5. Plaintiffs contend that if Defendants could show injury by the disclosure, it would be *de minimis* and outweighed by the need to protect the public health and safety. *Id.* at 7. Plaintiffs assert that *Rhinehart* does not control the decision because the protective order in that case was issued to maintain the confidentiality of non-party individuals who made donations to a religious organization which sued a newspaper for defamation. *Id.* at 6.

Defendants' reply brief asserts that "disclosure of information arguably suggestive of a product defect to a customer in advance of any judicial determination of the existence of a product defect is a clearly defined and serious injury to the Defendants." (# 196, at 2.) Defendants further contend that the first issue to be decided is whether the documents should be deemed confidential, and if so, the second issue for decision is whether a sufficient public safety issue exists to justify their disclosure. *Id.* at 4–5.

The court finds *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), to be of little assistance in resolving this dispute. That case addressed whether a protective order constituted a prior restraint on freedom of expression prohibited by the First Amendment to the Consti-

tution. The Court ruled that the protective order entered on a showing of good cause was limited to the context of pretrial discovery, did not restrict dissemination of information gained from other sources in addition to the discovery, and did not offend the First Amendment. *Id.* at 37, 104 S.Ct. 2199.

There is limited authority on the designation of documents as "CONFIDENTIAL" under an umbrella protective order. In addition to the *Manual for Complex Litigation,* the court has considered *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108 (3d Cir.1986), and *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir.1994). Both of these cases address Rule 26(c).

*Cipollone* addresses the standard for determining whether Defendants have shown good cause for a protective order when they claim that dissemination would cause annoyance, embarrassment, and economic harm. After stating that the burden of persuasion rests on the party seeking protection, the court noted that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." *Cipollone,* 785 F.2d at 1121. Like the instant case, *Cipollone* did not involve trade secrets; thus the court addressed commercial embarrassment:

> [B]ecause release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious. As embarrassment is usually thought of as a nonmonetizable harm to individuals, it may be especially difficult for a business enterprise, whose primary measure of well-being is presumably monetizable, to argue for a protective order on this ground. * * * [T]o succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position.

*Id.* (citation omitted).

*Pansy* involved a confidentiality order which covered a settlement agreement, not discovery materials. The court noted that the two instances "have comparable features and raise similar public policy concerns." *Pansy,* 23 F.3d at 786. The court in *Pansy* stated that

> [a]ll such orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings. Also, protective orders ... are often used by courts as a means to aid the progression of litigation and facilitate settlements. Protective orders and orders of confidentiality are functionally similar, and require similar balancing between public and private concerns. * * * [G]ood cause must be demonstrated to justify the order.

*Id.* (footnote omitted). Quoting from Professor Miller's article, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L.Rev. 427, 432–33 (1991), the court in *Pansy* adopted a balancing process:

> [T]he court ... must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result. Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," .... Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public.

*Id.* at 787. The court listed factors for consideration:

> Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety, ... and when the sharing of information among litigants would promote fairness and efficiency.

> A factor which a court should consider in conducting the good cause balancing test is whether a party benefiting from the order of confidentiality is a public entity or official. Similarly, the district court should

consider whether the case involves issues important to the public.

*Id.* at 787–88 (citations omitted).

The court finds, for the reasons set forth below, that the four documents at issue do not contain confidential commercial information pursuant to Rule 26(c)(1)(G). As a result, the designation of "CONFIDENTIAL" should be removed from these documents. While the court need not reach the issue of good cause, it will, nevertheless, conduct such an analysis, along with the concomitant consideration of commercial embarrassment.

Turning first to the determination of whether the documents contain confidential commercial information, subsection (G) of Rule 26(c)(1) reads as follows: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following * * * (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." The word "confidential" modifies "research [information]," "development [information]," and "commercial information." The subsection, by its use of the word "other," equates "trade secret" with the three types of "confidential . . . information." Thus the subsection treats equally "a trade secret or other confidential . . . commercial information."

■ Consistent therewith, in *United States v. International Bus. Mach. Corp.*, 67 F.R.D. 40, 46–47 (S.D.N.Y.1975), the court wrote that in determining whether documents contain confidential commercial information,

the court will be guided by considerations commonly employed when determining if certain information rises to the level of a trade secret such as is embodied in Section 757 of the Restatement of Torts. There, [it] is suggested that factors of secrecy to be considered when determining if given

information ought to be treated as a trade secret are: (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended . . . in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

(footnote omitted).[2]

Similarly, in the context of Rule 45(c)(3)(B)(i) of the Federal Rules of Civil Procedure, which permits a court to protect a person subject to or affected by a subpoena from "disclosing a trade secret or other confidential research, development, or commercial information," the court in *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D.Nev.1994), characterized "[c]onfidential commercial information" as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."

■ The four documents are evidence of Defendants' internal efforts, taken prior to initiation of this action and in response to Plaintiffs' complaints and inquiries, to determine the cause of the couplings' failures. The court will address each document individually.

The first document, an email of unknown date, has no discernible commercial value whatsoever. It merely suggests the possibility that failed couplings came from particular material runs.

The second document, a chronology dated sometime after June 2005, sets forth actions taken to develop information which "will be

---

2. The Uniform Trade Secrets Act defines a "trade secret" as follows:

"Trade secret" means information, including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process, that:
(1) Derives independent economic value, actual or potential, from not being generally known

to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

W. Va.Code § 47–22–1(d).

used to support the accuracy of our written response to Massey." It is noteworthy that one of the entries in the chronology indicates that one of Plaintiffs' mines adds DOP plasticizer to its process water. Another mentions the possibility that silicone oil may be a source for DOP plasticizer. The document contains at least three possible sources for the DOP, and no firm conclusion. The chronology is simply a recitation of facts of an investigation, and the court cannot discern any commercial value to the entries. It is possible that the document constitutes evidence of Defendants' good faith efforts to investigate the warranty claims by Plaintiffs.

The third document is a notice of a meeting to take place on April 19, 2005, to discuss the next steps in light of a conclusion that DOP exposure contributed to the couplings' failure. This document does not indicate the source of the DOP, and the court cannot discern any commercial value it may have.

The fourth document, an email, is dated February 9, 2005, and recites representations made by a RubberMill salesman that RubberMill O-rings do not contain plasticizers or other substances which attack or deteriorate PVC. The court has no means of determining whether the representations are true or false; it is merely a memorandum of remarks which may have some evidentiary value in this case. The court does not perceive any commercial value to the document.

The court finds that the four documents do not contain "confidential commercial information" similar to a trade secret with independent economic value by virtue of their possession by Defendants and their non-possession by others who could obtain economic value from their use. Defendants have not made a showing as to what efforts were undertaken to keep the information contained in the documents a secret. The documents were not marked as being confidential or privileged prior to being disclosed to Plaintiffs. Indeed, the fourth document, an email, recounts a conversation between defendant Victaulic's employee and a RubberMill salesman, thus suggesting the issues surrounding the coupling problem were not kept under strict confidence within the company. Likewise, the second document, a chronology prepared "to support the accuracy of our written response to Massey," also suggests that the information contained therein was developed for the purpose of dealing with the issue raised by Plaintiffs, including the sharing of information with Plaintiffs about information learned in connection with the investigation into the coupling problem.

In *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 890 n. 42 (E.D.Pa.1981), the court aptly noted the "wide variety" of confidential commercial information courts have recognized as subject to protection under Rule 26(c)(7) now Rule 26(c)(1)(G):

> See, e.g., *Magnavox Co. v. Mattel, Inc.*, No. 80–4124 (N.D.Ill. March 24, 1981) (agreements between patentee and licensee, patent sub-license agreements, and royalty reports); *Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F.Supp. 234 (S.D.N.Y.), *aff'd mem.*, 573 F.2d 1288 (2d Cir.1977) (customer list); *Vollert v. Summa Corp.*, 389 F.Supp. 1348 (D.Hawai'i 1975) (financial records detailing capitalization, net worth, and annual income); *Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y.1973) (license fees and oral contracts with customers); *Spartanics, Ltd. v. Dynetics Eng'r. Corp.*, 54 F.R.D. 524 (N.D.Ill.1972) (information pertaining to market entry); *Russ Stonier, Inc. v. Droz Wood Co.*, 52 F.R.D. 232 (E.D.Pa.1971) (customer and supplier list); *Corbett v. Free Press Assoc.*, 50 F.R.D. 179 (D.Vt.1970) (profit and gross income data); *Essex Wire Corp. v. Eastern Elec. Sales Co.*, *supra*, (terms of contract); *Hecht v. Pro–Football, Inc.*, 46 F.R.D. 605 (D.D.C.1969) (financial statements); *Borden Co. v. Sylk*, 289 F.Supp. 847 (E.D.Pa. 1968), *appeal dismissed*, 410 F.2d 843 (3d Cir.1969) (prices charged and volume sold to customer); *Turmenne v. White Consol. Indus., Inc.*, 266 F.Supp. 35 (D.Mass.1967) (customer lists); *American Oil Co. v. Pennsylvania Petrol. Prods. Co.*, 23 F.R.D. 680 (D.R.I.1959) (lists of dissatisfied customers).

(alteration to original to add underlining of case names and subsequent history). Notably absent from this fairly exhaustive list is anything remotely resembling the kind of

information for which Defendants seek protection under Rule 26(c)(1)(G). In short, the court does not consider documents which were generated in response to customers' complaints or warranty claims to be "confidential commercial information" under Rule 26(c)(1)(G).

Furthermore, the court notes that Defendants have not made reasonable efforts in the context of this litigation to maintain the secrecy of the documents. If the documents were truly sensitive, Defendants had the option of objecting to disclosure, withholding them, and preparing and serving a privilege log. Due to Electronic Case Filing, the four documents have been on the public record since March 6, 2008, and accessible to anyone with a PACER account. Defendants have not filed a motion to seal them.

Having determined that the documents do not qualify as confidential commercial information subject to protection under Rule 26(c)(1)(G), the court could end the matter. However, the court will address the issue of commercial embarrassment in order to cover all bases. Defendants contend in their Brief that they will be subject to embarrassment and injury to their corporate reputations if the documents are disclosed because the documents "provide a misleading picture ... that Aquamine and Victualic both provided false information to a customer and failed to provide information of import to public health to that customer." (# 182, at 6.) The court disagrees.

The documents themselves make no indication of falsity of information, or willful omission of material information. In fact, the second document was prepared for the purpose of providing *accurate* information to Plaintiffs. It is possible that these documents may lead to damaging conclusions when considered with other documents or testimony, but that is not the court's concern. In *Nicklasch v. JLG Indus., Inc.*, 193 F.R.D. 570, 574 (S.D.Ind.1999), the court declined to find good cause under Rule 26(c) for the protection of incident reports of prior lift failures in a personal injury suit brought against the manufacturer of a failed lift where the manufacturer feared "possible embarrassment ('public exposure') and groundless litigation as a result of misinterpretation by the public of the partial information and causation information in the incident reports." In *Nicklasch,* the court reasoned that

> [t]he law provides sufficient means to control and sanction groundless litigation and the courts should not attempt to determine when information in discovery is 'complete' or 'partial' or likely to be misinterpreted. If [the manufacturer] fears possible misinterpretation of partial information, it can release complete information and its interpretation of the data.

*Id.*

The court notes that Plaintiffs' Complaint against Defendants contains a count alleging intentional misrepresentation, which has been on the public record since June 30, 2006. Given widespread internet access, it is likely that Defendants' customers have long had the ability to read the allegations of the Complaint, to adjust their opinion of Defendants' business practices, and to take such action as they deem appropriate under the circumstances. Defendants' assertion that they will suffer "severe economic damage" if the documents are disseminated beyond this action is simply unpersuasive, and lacks specific examples or articulated reasoning as required by *Cipollone.*

The court need not address public health and safety issues. The threshold question is whether Defendants are entitled to maintain the "CONFIDENTIAL" designation on the four documents, and the court has concluded that they do not qualify for such protection. The court has also determined that Defendants have failed to show good cause for the documents being subject to the Protective Order. Plaintiffs' Motion (# 149) asks *the undersigned Magistrate Judge* to release the four documents to various entities or individuals, and the court declines to do so. This ruling merely lifts the terms of the Protective Order (# 37) from applying to the four documents. For the foregoing reasons, it is hereby **ORDERED** the Plaintiffs' Motion (# 149) is **GRANTED** to the extent that the "CONFIDENTIAL" label is removed from Defendants' documents AV1371, AV1426–27, AV1461, and AV1757, and otherwise **DENIED.** The parties will bear their own costs.

The Clerk is directed to transmit this Memorandum Opinion and Order to all counsel of record and to publish this decision on the court's website at www.wvsd.uscourts.gov.